*1105 OPINION OF THE COURT
Richard Velasquez, J.
Petitioner brought a claim against respondents for breach of the parties’ lease for an apartment located at 1636 43rd Street, apartment A3, Brooklyn, New York, 11204. Petitioner claims respondents vacated their apartment in breach of their lease — a lease that had been renewed automatically when respondents failed to sign their renewal lease. Petitioner also claims that respondents failed to notify petitioner of their intent to vacate. Respondents’ claim that they did notify petitioner of their intent to move and had various conversations about the actual date they would vacate, but have no proof of same. Respondents also claim that petitioner is wrongfully charging them for a two-year renewal lease, as petitioner is only allowed to renew for one year where a tenant fails to sign a renewal lease but remains in possession. Petitioner claims that it is entitled to charge at the rate of a two-year lease renewal, as respondents had always renewed for a two-year term. At trial respondents produced a copy of their renewal lease obtained from petitioner with the notation “AUTOMATICALLY RENEWED FOR 1 YEAR AS PER DHCR RULES & REGULATIONS” stamped on it.
Petitioner claims $645.86 plus late fees for August through November 2004 with a balance from July 2004 of $109.64 for a total of $2,693.08. Respondents claim that as early as February petitioner knew that respondents intended to vacate their apartment and on several occasions petitioner called respondents to find out the exact moving date so that renovations on the apartment could commence. Respondents vacated on August 16, 2004. Petitioner claims that work was completed on the subject apartment in September but that it took two additional months to locate any tenants willing to rent the apartment.
Discussion
This court finds that when an unsigned lease renewal of a rent-stabilized apartment is automatically renewed, it is for the same terms as previous lease renewals between the parties, and that one of those terms is a choice as to whether the tenant wishes to renew for one or two years. Petitioner’s interpretation of the relevant part of the Rent Stabilization Code is incorrect, insofar as petitioner argues that because the respondents had previously renewed for two years, they must now accept a two-year renewal lease. Rent Stabilization Code (9 NYCRR) § 2523.5 (c) (2) provides:
*1106 “Where the tenant fails to timely renew an expiring lease or rental agreement offered pursuant to this section, and remains in occupancy after expiration of the lease, such lease or rental agreement may be deemed to have been renewed upon the same terms and conditions, at the legal regulated rent, together with any guidelines adjustments that would have been applicable had the offer of a renewal lease been timely accepted.” (Emphasis supplied.)
A rent-stabilized lease renewal provides a choice for the tenant as to the term of the lease. The tenant can choose to renew for either a one- or two-year term. Petitioner is not permitted to substitute its choice for a two-year term for the tenant. In fact, even petitioner’s own renewal form acknowledges that it can only renew for one year where a tenant has failed to timely renew. This court finds that the legal rent for the subject premises was $627.04 for a one-year term which began on February 1, 2004.
Petitioner also claims rent for the months of August, September, October and November and a balance due from July for $109.64. Petitioner acknowledges that respondents vacated the premises on August 16, 2004. Petitioner alleges that the reason it is claiming for the months of October and November is that it took petitioner from August 16, 2004 until December 1, 2004 to locate tenants for this first-floor apartment in a rent-stabilized building at a legal rent of approximately $700 in the neighborhood of Borough Park, Brooklyn. In September petitioner alleges that it was renovating the apartment. Petitioner offered no evidence or documentation of any kind regarding its efforts to locate tenants for the subject premises, nor did it put forth any argument as to its duty or lack thereof to mitigate damages.
' This court finds in accordance with Paragon Indus, v Williams (122 Misc 2d 628 [App Term, 2d Dept 1983]) that in this judicial district, a landlord does have a duty to mitigate damages when a tenant leaves before the end of its term. As announced in Palumbo v Donalds (194 Misc 2d 675 [2003]), petitioner also has a duty to present credible evidence as to efforts made to let the vacated premises. In Palumbo, petitioner testified that it had retained two real estate agents and that the apartment had been shown once. This testimony was held to be insufficient for the petitioner to be awarded a judgment for two additional months after vacatur.
*1107 29 Holding Corp. v Diaz (3 Misc 3d 808 [2004]) demonstrates that landlords in the First Department are now being found to have a duty to mitigate damages and to offer proof of mitigation attempts. In language this court finds compelling the 29 Holding Corp. v Diaz court held:
“The concept that a landlord can hold a residential tenant hostage to the terms of a lease, doing nothing and permitting damages to accrue when leased premises are readily marketable, is clearly contrary to common sense, the reasonable expectations of the public, and notions of justice and equity ... It is almost axiomatic that commercial leases may and should be governed by a different rule than residential leases. A commercial tenant which has negotiated a lease which provides that the landlord need not mitigate damages may take proper precautions against the possibility of default, may seek to assign or sublet, or may simply defer abandoning the lease. The same cannot be said of the average citizen in a mobile society, who may choose to or be required to relocate for a myriad of health-related or other personal reasons. Nor can this court endorse an antiquated rule of law which would encourage the warehousing of residential apartments, frustrate the mobility of the population, and result in an inequitable and intolerable burden on residential tenants.” (29 Holding Corp., supra at 817.)
Petitioner offered no evidence whatsoever as to any attempts made to mitigate damages. As respondents admitted staying beyond the original date of vacatur given to petitioner of July 2004, this court awards petitioner rent for August and September 2004, if not already remitted by respondents. Petitioner is also awarded an outstanding balance from July 2004 of $109.64 if not already remitted. As petitioner overcharged respondents by $18.02 beginning in February 2004 through July 2004, respondents are due a credit of $108.12. Accordingly, judgment for petitioner in the amount of $1,256.08.